IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY a/s/o Brittany Lehman and Nathan Becker, Charles K. Powell, Jr., and Anthony Cuthbertson,       Plaintiff, <br><br> v. <br><br> TINA JEFFERSON, ANDRE DRAYTON, SYMONE SCOTT, AND UNITED WATER COMPANY,       Defendants. | CIVIL ACTION <br><br> NO. 12-1107 |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                                  July 17, 2013

      State Farm Fire & Casualty Co. (State Farm) brings this lawsuit against United Water Pennsylvania, Inc. (United Water), alleging negligence in connection with a fire at the Quail Run Apartment Complex (Quail Run) in Harrisburg, Pennsylvania.[1] United Water moves to dismiss for lack of subject matter jurisdiction or, in the alternative, to bifurcate and stay the case pursuant to the primary jurisdiction doctrine. For the following reasons, I will grant the motion in part and deny it in part.

## I.    BACKGROUND

      State Farm insured the real and personal property of several Quail Run residents. Compl. ¶¶ 9-12. United Water provided domestic water services to Quail Run, to its fire hydrants, and to hydrants in the immediate vicinity. Id. ¶ 15. On June 11, 2010, a fire

---

[1] State Farm also sued Tina Jefferson, Andre Drayton, and Symone Scott, all of whom occupied the unit in which the fire originated. These parties have since been dismissed. Doc. No. 16.

broke out in one of Quail Run's units.  Id. ¶ 16.  The Colonial Park Fire Department responded but could not obtain adequate water volume from nearby hydrants despite twice requesting that United Water increase the water pressure serving the fire scene.  Id. ¶ 33.  The fire spread to neighboring units insured by State Farm, causing damage.  Id. ¶ 18.

State Farm paid a total of $109,498.18 to its insureds as a result of the fire.  State Farm, as subrogee of its insureds, now alleges that United Water negligently failed to supply Quail Run's fire hydrants with adequate water volume and pressure.  Id. ¶¶ 17, 32, 34.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

United Water contends that the Pennsylvania Public Utility Code (the Utility Code) divests this court of subject matter jurisdiction by placing primary jurisdiction in the Pennsylvania Public Utility Commission (the Commission).  Accordingly, it moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss State Farm's complaint for lack of subject matter jurisdiction.

A motion under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  Because United Water contends that State Farm's allegations, accepted as true, fail to invoke this court's jurisdiction, it asserts a facial challenge.  M.C. v. Bianchi, 782 F. Supp. 2d 127, 128 (E.D. Pa. 2011).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould, 220 F.3d at 176.

United Water's argument is mistaken in two fatal respects. First, the primary jurisdiction doctrine, in both federal and Pennsylvania courts, "has nothing to do with subject matter jurisdiction." MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1107 (3d Cir. 1995) (Nygaard, J., concurring); Reiter v. Cooper, 507 U.S. 258, 268-69 (1993); White v. Conestoga Title Ins. Co., 53 A.3d 720, 728 n.14 (Pa. 2012). Rather, the doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." U.S. ex rel. Haskins v. Omega Inst., Inc., 11 F. Supp. 2d 555, 560 (D.N.J. 1998); Elkin v. Bell Tel. Co. of Pennsylvania, 420 A.2d 371, 376 (Pa. 1980). Thus, assuming for the moment the Commission does have primary jurisdiction over this dispute, that alone would not deprive this court of its properly invoked subject matter jurisdiction. Second, and more to the point, "state statutes cannot divest federal courts of jurisdiction." Dolan v. Cmty. Med. Ctr. Healthcare Sys., 500 F. Supp. 2d 503, 509 (M.D. Pa. 2007); Marshall v. Marshall, 547 U.S. 293, 314 (2006). The Utility Code therefore does not and could not, under any circumstances, divest this court of subject matter jurisdiction.

This court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a). State Farm is a citizen of Illinois, United Water is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000.00. Compl. ¶¶ 1, 5-6. United Water's motion is therefore denied insofar as it seeks dismissal of the complaint for want of subject matter jurisdiction.

B.     Primary "Jurisdiction"

United Water's argument that the Commission has primary jurisdiction over this dispute warrants a closer look. As indicated, the phrase "primary jurisdiction" is a misnomer insofar as the doctrine bearing its name "does not involve any question of subject matter jurisdiction." Ostrov v. I.F.T., Inc., 586 A.2d 409, 413 (Pa. Super. Ct. 1991); Pettko v. Pennsylvania Am. Water Co., 39 A.3d 473, 478 n.9 (Pa. Commw. Ct. 2012) ("In contrast to the primary jurisdiction doctrine, we note that courts have defined subject matter jurisdiction generally as a court's or tribunal's power to hear cases of the class to which the case at issue belongs."). Rather, in Pennsylvania:

> [T]he doctrine of primary jurisdiction is jurisprudential, developed by [the Pennsylvania Supreme Court] to accommodate the respective spheres of adjudicatory authority of the Commonwealth's administrative agencies and the common pleas courts. Under the doctrine, a trial court, which has subject matter jurisdiction over a claim, determines that an agency's expertise is needed on a particular issue. Accordingly, it refers the question to the agency and stays judicial proceedings, pending the agency's determination. The agency's subsequent determination on the issue, when final, is binding and not subject to collateral attack upon the resumption of judicial proceedings.

White, 53 A.3d at 728 n.14 (citations and internal quotation marks omitted).[2] Referral to a state agency under the primary jurisdiction doctrine is appropriate only "where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be

---

[2] Under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), and its progeny, a federal court sitting in diversity "must apply the substantive law of the forum state." Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008). The doctrine of "primary jurisdiction is part of the substantive law of Pennsylvania." MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1110 (3d Cir. 1995) (Nygaard, J., concurring). Accordingly, to the extent a Pennsylvania common pleas court would defer to a state agency's primary jurisdiction, so must I. Id. at 1112 (Nygaard, J., concurring); see also e.g., Virginia Imports, Inc. v. Kirin Brewery of Am., LLC, 296 F. Supp. 2d 691, 698 n.1 (E.D. Va. 2003) ("Assuming that primary jurisdiction did apply, under the principles established by Erie, Federal courts will defer to the primary jurisdiction of a state agency, if state courts would defer.").

4

familiar." Elkin, 420 A.2d at 377 (emphasis added). In making this determination, courts must look beyond the "form of [the] action or the manner in which is titled" to "the essence of the underlying claims." DeFrancesco v. W. Pennsylvania Water Co., 453 A.2d 595, 597 n.5 (Pa. 1982).

United Water argues that primary jurisdiction rests with the Commission for two reasons. First, United Water contends that resolving this dispute will require "the adjudication of issues involving the reasonableness, adequacy and sufficiency of public utility services," for which the Commission "has long been recognized as the appropriate forum." Elkin, 420 A.2d at 374; 66 Pa. C.S. §§ 1504-05. And second, United Water contends that State Farm's claim implicates United Water's tariff, the interpretation of which is considered to be "peculiarly within the expertise of the . . . Commission." Bell Tel. Co. of Pennsylvania v. Uni Lite, Inc., 439 A.2d 763, 765 (Pa. Super. Ct. 1982). Regarding "fire hydrant service or private fire hydrant sprinkler and hose service," the tariff provides that United Water "shall have no greater duty . . . than to supply only such volumes of water at such pressures as may be available in the normal operation of the waterworks facilities at the time of use." Doc. No. 5-4 at 55, ¶ 53. Regarding its liability for "a loss resulting from failure to supply water or pressure or for any other cause," the tariff provides that United Water "shall not be held liable for any amount in excess of ten percent of the annual charge for public fire hydrant service or for private fire fighting service." Id. ¶ 54.

Applying Elkin's two-part test, and looking to the essence of State Farm's claims, I find that referral to the Commission is appropriate to determine whether United Water

5

supplied "such volumes of water at such pressures as may be available in the normal operation of the waterworks facilities at the time of use." Doc. No. 5-4 at 55, ¶ 53. State Farm appears to concede that the subject matter of its suit is within the Commission's jurisdiction, Doc. No. 10 at 11, and I agree. The essence of State Farm's claim is that "United Water failed to provide enough water pressure to allow for a sufficient amount of water to extinguish the . . . fire." Compl. ¶ 17; see also id. ¶ 33 ("United Water owed a duty Quail Run to provide adequate and sufficient quantities of water for firefighting purposes at the Quail Run Apartment Complex."); id. ¶ 34 (alleging acts of "negligence and carelessness" such as "[f]ailing to provide sufficient water volume to Quail Run to allow the Colonial Park Fire Department to properly fight the fire," "[c]ausing and/or allowing the fire to spread due to a lack of appropriate water volume at Quail Run," and "[f]ailing to notice, observe, understand, discern and/or perceive the dangerous condition caused by failing to provide adequate water volume to Quail Run at the time of the fire"). Surely, these allegations raise issues involving the reasonableness, adequacy, and sufficiency of United Water's service. While State Farm disputes that the Commission's expertise is required, I have little trouble concluding that it is. "Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility." PPL Elec. Utilities Corp. v. Pennsylvania Pub. Util. Comm'n, 912 A.2d 386, 402 (Pa. Commw. Ct. 2006). United Water's alleged "duty . . . to provide adequate and sufficient quantities of water for firefighting purposes," Compl. ¶ 33, is explicitly defined in its tariff. Doc. No. 5-4 at 55, ¶ 53. There is accordingly no doubt that resolving this dispute will require a determination of United Water's compliance with its tariff, even though

6

unmentioned by State Farm in its complaint. Because Pennsylvania courts are uniform in holding that "it is the Commission that has the expertise to examine and interpret tariff language," referral of this question is necessary. PPL Elec. Utilities Corp., 912 A.2d at 403; Teleconcepts, Inc., 71 F.3d at 1105 ("The agency that can best determine [a utility's] compliance with [its] tariff is the [Commission].").

In opposition, State Farm focuses on DeFrancesco, 453 A.2d 595, which addressed the primary jurisdiction doctrine on facts seemingly quite similar to those here. The plaintiffs' properties were destroyed by a fire, which the Pittsburgh Fire Department was unable to contain. They sued the Western Pennsylvania Water Company (West Penn), "alleging that the fire was not controlled because West Penn failed to provide water pressure in the fire hydrant near [their] properties." Id. at 595. In holding that primary jurisdiction did not rest with the Commission, the court explained that:

> The controversy now before us . . . is not one in which the general reasonableness, adequacy or sufficiency of a public utility's service is drawn into question. Resolution of appellant's claims depended upon no rule or regulation predicated on the peculiar expertise of the PUC, no agency policy, no question of service or facilities owed the general public, and no particular standard of safety or convenience articulated by the PUC. Rather, the gravamen of the allegations at trial was within the prescan authority of the courts, i.e., that the utility *negligently* failed to provide service required.

Id. at 597.

State Farm argues that DeFrancesco controls because, like the plaintiffs there, it alleges that a public utility "acted negligently failing to supply enough water pressure to the subject fire hydrants." Doc. No. 10 at 10. I find DeFrancesco's holding to be more nuanced than that. The allegation of negligence before the court was "that West Penn's

7

employees had worked on the hydrant the day of the fire and, as a result, the water pressure in the hydrant sputtered off and on, below its normal pressure." DeFrancesco, 453 A.2d at 596.[3] On this point, DeFrancesco is distinguishable. State Farm does not contend that a discrete act of negligence caused the hydrant's insufficient water pressure; it alleges that the hydrant's insufficient water pressure was itself negligent. Put another way, State Farm alleges that United Water failed to supply Quail Run's hydrants with adequate water volume and pressure in the ordinary course of business. This is a categorically different allegation than the one advanced by the DeFrancesco plaintiffs. It is therefore not surprising that resolution of the plaintiffs' claims in Defrancesco, confined as they were to an act of negligent repair, "depended upon no rule or regulation predicated on the peculiar expertise of the PUC." Id. at 597. As explained, State Farm's claim turns directly on a regulation within the Commission's peculiar expertise. Doc. No. 5-4 at 55, ¶ 53.

For these reasons, the Commission has primary jurisdiction over whether United Water supplied "such volumes of water at such pressures as may be available in the normal operation of the waterworks facilities at the time of use." Doc. No. 5-4 at 55, ¶ 53.[4] In accordance with the bifurcated procedure adopted by the Pennsylvania Supreme

---

[3] The Superior Court clarified the parties' allegations on remand: "The issue at trial was who was responsible for the inadequate supply of water. The mains that supplied water to the hydrants were owned and maintained by [West Penn]. [The plaintiffs] contended that the inadequate supply of water was caused by [West Penn's] employees' negligent repairs on August 10, 1973—the day before the fire. [West Penn] contended that the inadequate supply was caused by the Fire Department's use of too many pumpers." DeFrancesco v. W. Pennsylvania Water Co., 478 A.2d 1295, 1298 (Pa. Super. Ct. 1984).

[4] I note for clarity that while the Commission does have primary jurisdiction, it does not have *exclusive* primary jurisdiction, as United Water appears to contend. "[A]n administrative agency does not have exclusive jurisdiction unless it has the power to award relief that will make a successful litigant whole." Pettko v.

Court, Elkin, 420 A.2d at 376-77, I will transfer this matter to the Commission for a determination of United Water's compliance with its tariff, as indicated above. The Commission is directed to address any other issue within its expertise that will aid in resolving this dispute. This case will be stayed pending receipt of the Commission's findings and conclusions, at which time it "may continue, guided in scope and direction by the nature and outcome of the agency determination." Elkin, 420 A.2d at 377.

IV. CONCLUSION

United Water's motion is granted in part and denied in part.

An appropriate order follows.

---

Pennsylvania Am. Water Co., 39 A.3d 473, 484 (Pa. Commw. Ct. 2012); DiSanto v. Dauphin Consol. Water Supply Co., 436 A.2d 197, 202 (Pa. Super. Ct. 1981). State Farm seeks money damages, which the Commission has no power to award. Elkin, 420 A.2d at 375. Because the Commission cannot make State Farm whole, it does not have exclusive primary jurisdiction over this dispute.